UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SPRING E.R., LLC, | § § | |
| Plaintiff, | § § | |
| vs. | § | CIVIL ACTION NO. H-09-2001 |
| AETNA LIFE INSURANCE COMPANY, INDIVIDUALLY AND D/B/A/ AETNA, et al., | § § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff Spring E.R., LLC's ("Plaintiff") Motion to Remand (Doc. No. 7). Considering the parties' filings and the applicable law, the Court finds that the Motion should be denied.

**I.     BACKGROUND**

**A.     Facts Leading up to this Lawsuit**

Plaintiff is an emergency care facility as defined under Section 1301.55 of the Texas Insurance Code. (Pl. Am. Compl., Doc. No. 1-7, ¶ 8.)  Defendants Aetna Life Insurance Company, Aetna Health Inc., Aetna Health Management LLC, and Aetna Health Administrators ("Defendants" collectively) are health insurance companies. (*Id*.) At various times, patients arrived at Plaintiff's emergency care facility seeking emergent care. (*Id*.) In each instance, the patients presented Plaintiff with an insurance card issued by Defendants. (*Id*.) After treating the patients, Plaintiff sent a bill for services rendered to Defendants. (*Id*. ¶ 9.)   Defendants refused to pay these bills. (*Id*.) Plaintiffs then brought this action in the 129th Judicial District of the District Court of Harris County,

1

Texas, alleging claims for relief under theories of implied contract, quantum meruit, and the Prompt Pay Act under Texas law. Defendants timely removed this case to this Court on the grounds that Plaintiff's complaint implicates remedies under the Employee Retirement Income Security Act ("ERISA"). Plaintiff now seeks to remand.

### B. Legal Background

#### 1. Standard for Removal

The remand statute, 28 U.S.C. § 1441(a), provides:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The party that seeks removal has the burden of establishing that federal jurisdiction exists and that removal of the suit was proper. *Manguno v. Prudential Property & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted). This burden is met through demonstrating federal jurisdiction by a preponderance of the evidence. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995), *cert. denied*, 516 U.S. 865 (1995) (invoking a "preponderance of the evidence" standard to determine whether removal was proper in the face of conflicting facts); *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402 (3rd Cir. 2004) (holding in the context of ERISA that the removing party bears the burden of establishing federal subject matter jurisdiction by a preponderance of the evidence); *IBEW-NECA Southwestern Health and Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. April 12, 2006) (noting in the context of ERISA that when a factual attack is made, the party seeking to invoke federal jurisdiction must come forward with proof and demonstrate by a preponderance of the evidence that the court has subject matter

jurisdiction). The court must strictly construe the removal statutes in favor of remand and against removal. *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211 (5th Cir. 2002). Furthermore, any civil action of which the district court has original jurisdiction founded on a claim arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. 28 U.S.C. § 1441(b). To determine whether a claim arises under federal law for removal purposes, the court ordinarily examines the well-pleaded allegations of the complaint and disregards any potential defenses. *Beneficial Nat. Bank, et al. v. Anderson*, 539 U.S. 1, 6 (2003) (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

### 2.     ERISA and Complete Preemption

Complete preemption, however, is a narrow exception to the well-pleaded complaint rule. Under the complete preemption doctrine, a cause of action may be recast as a federal claim for relief, making its removal proper, if the law governing the complaint is exclusively federal. *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1273 (2009); *see also Beneficial Nat. Bank*, 539 U.S. at 8. In other words, the federal statute must wholly displace the alternative, non-federal cause of action in order for complete preemption to apply. *Beneficial Nat. Bank*, 539 U.S. at 8. In enacting ERISA, Congress created a comprehensive civil enforcement scheme for employee welfare benefit plans that completely preempts any state law cause of action that "duplicates, supplements, or supplants" an ERISA remedy. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). "Complete preemption converts a state law civil complaint alleging a cause of action that falls within ERISA's enforcement provisions into 'one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Lone Star OB/GYN Assoc. v. Aetna*

*Health, Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (quoting *Davila*, 542 U.S. at 209 (citation omitted)).

Section 502(a)(1)(B) of the ERISA statute provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(b). "Therefore, if a party's state law claims fall under [this Section], they are preempted by ERISA." *Lone Star*, 579 F.3d at 529. The Supreme Court has decided the question of how to determine whether ERISA completely preempts a non-federal cause of action. In *Davila*, the Court held that "[I]f and an individual . . . could have brought his claim under Section 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA Section 502(a)(1)(B)." *Davila*, 542 U.S. at 201. Here, there is no question that Plaintiff seeks payment for medical services rendered to persons whom Defendants insure, which could plausibly fall within the scope of Section 502(a)(1)(B). This two-part inquiry therefore requires the Court to determine whether Plaintiff could have brought this action under ERISA, and, of so, whether the asserted claims for relief nonetheless implicate legal duties independent of ERISA.[1] If the first of these questions is answered in the affirmative, and the second in the negative, Plaintiff's Motion must be denied.

## III.     PLAINTIFF'S STANDING UNDER ERISA

---

[1] Although Plaintiff, in its original Motion, challenges whether this case in fact involves an ERISA health insurance plan at all, Defendants, in their response, provide the terms of the plans themselves with supporting affidavits explaining how the relevant plans did in fact meet the definition of an ERISA plan. (Def. Resp., Doc. No. 10, at 6-8.) The Court finds this evidence sufficient to establish that at least one of the health insurance plans involved in this case does in fact qualify as an ERISA plan.

The first part of the inquiry requires this Court to determine whether Plaintiff could have brought its claims under Section 502(a), or whether it has standing to sue under the ERISA statute. By its terms, standing under ERISA is limited to participants and beneficiaries. *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27 (1983). A medical care provider has no independent standing to bring an action under Section 502(a) of ERISA, but can enjoy derivative standing as an assignee of plan benefits. *Memorial Hosp System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990) (citing *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988)). Under this theory, the medical provider stands in the shoes of the ERISA beneficiary to assert its rights under the plan terms, rather than asserting some independent legal duty owed directly to the healthcare provider. "All one needs for standing under ERISA is a colorable claim for benefits, and '[t]he possibility of direct payment is enough to establish subject matter jurisdiction.'" *Connecticut State Dental Association v. Anthem Health Plans, Inc.*, --- F.3d ---, 2009 WL 5126236, at *12 (11th Cir. 2009) (citing *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir. 1991)).

Here, whether Plaintiff received an assignment of the benefits under the ERISA plans from plan members is fiercely disputed by the parties. Each presents directly contrary evidence on the issue. As the removing party, Defendants bear the burden of demonstrating by a preponderance of the evidence that there was such an assignment.

In support of its contention that Plaintiff did not receive an assignment of benefits from its patients, Plaintiff presents the declaration of James Rutherford, an administrator and corporate representative of Plaintiff. Mr. Rutherford states that Plaintiff "does not

5

have its patients execute an assignment of benefits" to Plaintiff, and that "[t]here is no assignment of benefits form even available at any of [Plaintiff's] emergency facilities." (James Rutherford Aff., Pl. Reply Ex. B, Doc. No. 12-2, ¶ 3.) Mr. Rutherford reiterates this contention in his deposition, taken for the limited purpose of this Motion. (James Rutherford Dep., Def. Sur-reply Ex. 1, Doc. No. 17-1, 29:22-31:13, Dec. 21, 2009.)

Defendants, however, produce evidence that, for the particular claims at issue in this case, records indicate that Plaintiff did in fact receive an assignment of benefits from the patients, thereby obtaining standing to sue under ERISA. First, Defendants produce printouts of records from their electronic database system reflecting claims for benefits submitted by Plaintiff. (Def. Resp. Ex. E-1 and E-3, Doc. Nos. 10-12 and 10-14.) The accompanying affidavit of an Aetna Manager states that the letter "A" in the Assignment field of these records indicates that the medical claim was submitted under an assignment to Plaintiff of the member's rights under the health plan. (Doc. No. 10-11 ¶¶ 4, 7.) Second, Defendants attach a blank UB-92 form, or the paper forms used by institutions such as hospitals to submit claims for payment of healthcare expenses under patients' health benefit plans. (Def. Resp. Ex. E-5, Doc. No. 10-16.) Field Number 53 is the "Assignment of Benefits Certification Indicator." (*Id.*) The description of this field provides "[a] code showing whether the provider has signed form authorizing the third party insurer to pay the provider directly for services." (*Id.*) Defendants also attach a copy of the UB-92 form submitted by Plaintiff relating to one of the patients whose claims are at issue in this case. Field No. 53 of this form contains the letter "Y." (Def. Resp. Ex. E-6, Doc. No. 10-17.) Mr. Rutherford's subsequent deposition confirms that this "Y" stood for "yes." (Rutherford Dep., 57:10-18.) Thus, it appears from these documents that

6

Plaintiff did indicate to Defendants that it had received an assignment of benefits from patients for at least some of the claims involved here. In his deposition, Mr. Rutherford attempts to explain the "Y" on several UB-92 forms submitted Plaintiff by stating that Plaintiff was only representing that it does accept an assignment of benefits, not that it did receive such an assignment in those individual cases. (Rutherford Dep. 62:4-65:25.) It appears that Plaintiff was concerned as to whether Defendants would pay these claims without such an indication. (*Id.*)

The Court finds Plaintiff's explanation somewhat questionable. While the Court accepts the contention that the forms completed by Plaintiff did not include the field descriptions submitted to the Court by Defendants, the Court does not accept the proposition that these descriptions were completely unavailable to Plaintiff when filling out the relevant forms. That Plaintiff would assign a meaning to Field 53 on the UB-92 form, which Plaintiff admits is unclear on the face of the form, and then fill out that box and submit the form to an insurance company on the basis of these unverified assumptions, seems, to this Court, highly unlikely. Plaintiff's representative demonstrates in his deposition that he is a knowledgeable and competent healthcare facility administrator, and such a person would undoubtedly inform himself of the relevant procedures for collecting monies from insurance companies prior to submitting such claims.

Moreover, considering the perspective of the party who regularly received and processed these forms, Defendants would have naturally assumed upon seeing the "Y" that, subject to their coverage determination under the relevant ERISA plan, they were obligated to pay Plaintiff directly. *See* (Danielle Anthony Aff., Def. Resp. Ex. E.) Indeed,

the Court is not clear, and Plaintiff does not adequately explain, why it would send claims to, and bring a case against, the insurer directly, rather than the patient, unless it had either negotiated a direct agreement with the insurance companies or filed the claims on behalf of the patients to whom the benefits are owed. Absent these two circumstances, Defendants' only obligation with regards to payment for medical services is to the patients, not to the healthcare provider. Indeed, Plaintiff's deposition statements strongly suggest that part of the reason why Plaintiff put a "Y" in Field 53 was to convey to Defendants that they could and should pay Plaintiff directly, even absent a Provider Agreement. Therefore, although the question has certainly not been proven beyond a reasonable doubt, considering all these factors, the Court finds that Defendants have demonstrated by a preponderance of the evidence that Plaintiffs were assignees to the benefits conferred to patients under the ERISA plans.

Accordingly, the Court holds that the documentation presented by Defendants, irrespective of reasoning behind it, is enough to confer standing upon Plaintiff such that it could have brought its claims under ERISA. After *Davila*, it has been stated by the Eleventh Circuit that "[a]ll one needs for standing under ERISA is a colorable claim for benefits, and '[t]he possibility of direct payment is enough to establish subject matter jurisdiction.'" *Connecticut State Dental*, 2009 WL 5126236, at *12. This Court concludes that the records submitted by Defendants give Plaintiff such a colorable claim, despite Plaintiff's insistence that it never actually sought these benefit assignments. *See id.* at * 10 (holding that claim forms submitted by dentists to defendant suffice to show an assignment of benefits and confer ERISA standing);[2] *compare Pascack Valley Hosp. v.*

---

[2] The Court acknowledges that factual distinction between *Connecticut State Dental* and this case, as described by Plaintiff in its brief. (Pl. Resp. to Def. Sur-reply, Doc. No. 19, at 7-10.) Most significantly,

8

*Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400-01 (3rd Cir. 2004) (noting that while party seeking removal bore the burden of establishing the existence of an assignment, the record contained "no evidence of an express assignment, whether oral or written," from the patients to the hospital, and that the hospital therefore had no standing to sue under ERISA). Because Plaintiff has repeatedly held itself out as an assignee of benefits under the relevant ERISA health plans, both circumstantially and in writing, and it presents no evidence other than the testimony of its corporate representative that it never actually received such assignments, the evidence strongly suggests that it would have the standing to bring an ERISA suit.[3]

## IV. INDEPENDENT LEGAL DUTIES

Having determined that Plaintiff would have standing to sue under ERISA, this Court must now turn to the second prong of the *Davila* test to examine whether Defendants' actions implicate legal duties which are entirely independent of ERISA, or which require no benefit determination under an ERISA plan. Where the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient is irrelevant to standing. *Lone Star*, 579 F.3d at 529 n.3. Thus,

---

that case involved the scope of the assignment under the claim form language, rather than the existence of the assignment. This distinction does not, however, render *Connecticut State Dental's* broader holding inapplicable here, as the underlying issue in both situations is whether the healthcare provider had the authority to step into the shoes of a plan beneficiary for purposes of a lawsuit. Moreover, that court's conclusion that the mere "possibility of direct payment" created jurisdiction does not, as Plaintiff suggests, fly in the face of *Lone Star*. The Court reads the language in *Connecticut State Dental* to address only the first prong of the *Davila* inquiry in holding that the possibility of direct payment under ERISA can confer standing such that a court can exercise subject matter jurisdiction, provided that the suit is not brought under an independent legal obligation pursuant to *Lone Star*. This Court's finding, therefore, that the claim forms in this case are enough to create the possibility of direct payment such that Plaintiff could have ERISA standing is consistent with both *Connecticut State Dental* and *Lone Star.*

[3] The Court notes that the opposite holding would imply that Plaintiff would be able to hold itself out as an assignee of ERISA benefits such that it could receive direct payments from insurance companies, but escape ERISA entirely when attempting to collect these payments, simply by stating that it never actually received such assignments. The Court finds this result to be illogical and to run contrary to the interests of justice.

9

this Court must determine whether, even as an assignee of the benefits under the ERISA plan, Plaintiff is in fact suing under obligations created by the plan itself, or under obligations independent of the plan and the plan member.

The first cause of action asserted by Plaintiff in this case is that of implied contract. A contract implied in fact "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Lection v. Dyll,* 65 S.W.3d 696, 704 (Tex. App.—Dallas 2001, pet. denied). To bring a claim under a theory of implied contract, a plaintiff must demonstrate the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances. *Haws & Garrett General Contractor's Inc. v. Gorbett Bros. Welding*, 480 S.W.2d 607, 609 (Tex. 1972). In support of its claim for relief, Plaintiff contends that "[t]he health card issued to patients represents, in cases of emergency, constitute [sic] an offer to healthcare providers to perform emergency services in exchange for compensation to be paid by the Defendants. [Plaintiff] performed such services, completing the contract. The contract implies reasonable compensation." (Pl. First Am. Compl. ¶¶ 11-12.)  Thus, the basis for Plaintiff's claim under a theory of implied contract is the health insurance card presented by the patients it treated. As Defendants rightly point out, however, these cards "bear express reference to the coverage terms and exclusions" under the ERISA plans.[4] Thus, in determining the facts, circumstances, and actions of the parties that may give rise to an implied contract, this Court would necessarily refer to the ERISA plans at issue, because the presented health cards

---

[4] Specifically, the coverage cards state that "members are entitled to plan benefits, subject to exclusions and limitations" and that "[t]his card does not guarantee coverage." (Jennifer Twery Aff., Def. Resp. Ex. F, ¶¶ 3-5.)

10

explicitly limit the offer to healthcare providers to the plan terms. As such, the implied contract claim asserted by Plaintiff cannot constitute an independent legal obligation that takes this case outside of the scope of ERISA. Defendants' liability to Plaintiff could only exist in this case under Defendants' administration of an ERISA-regulated benefit plan, because these are the only terms under which Defendants made the offer in the implied contract asserted by Plaintiff. *Davila*, 542 U.S. at 213. In other words, whether Defendant could be liable to Plaintiff for failure to pay under an implied contract theory would turn on whether Defendant had an obligation to pay Plaintiff under the ERISA plan identified on the card.[5]

The cases cited by Plaintiff, on the other hand, are distinguishable in material ways. In *Lone Star*, the Fifth Circuit adopted a "rate of payment" and "right of payment distinction," and found that obligations arising out of dispute over the rate of payment, as set out in a Provider Agreement between the insurance company and the healthcare provider, were entirely independent of the coverage determination made under the ERISA plan. *Lone Star*, 579 F.3d at 530-31. Thus, the decision in that case arose from a wholly separate agreement between the insurance company and the healthcare facility. Here, there is no such Provider Agreement between Plaintiff and Defendants, as made abundantly clear by the fact that Plaintiff's contractual claim is one under implied contract. However, as discussed above, the implied contract at issue here is limited by the terms of the ERISA plan, and therefore not independent.

---

[5] Indeed, the Court notes that a contrary holding would be illogical. Essentially, Plaintiff is claiming that Defendants had an implied duty to pay Plaintiff for the medical services rendered because the insurance card they issued was presented, regardless of the terms of the insurance plan identified by the card. Under Plaintiff's theory, then, the terms of health insurance coverage would be rendered meaningless in every situation in which a patient presented an insurance card and a healthcare provider sought payment from the insurance company, because the insurance company would *automatically* owe the healthcare provider "just compensation," irrespective of coverage determinations, a Provider Agreement, or an assignment of benefits. The Court rejects this unpalatable proposition.

11

Similarly, in *Marin Gen. Hosp. v. Modesto & Empire Transaction Co.*, 581 F.3d 941 (9th Cir. 2009), the plaintiff-hospital's claim was based on a telephone conversation in which the defendant agreed to pay 90% of the patient's charges. *Id.* at 947. Thus, the plaintiff's claims in that case were also based on agreements and representations made by the defendant that were wholly separate from, and independent of, any ERISA plan. Again, under the theory of implied contract asserted here, there is no such separate agreement, as the representations made by Defendants in this case are defined by the health insurance card that explicitly references the ERISA plan. For this reason, these cases are inapposite.

Because Defendants have demonstrated that at least one of Plaintiff's stated claims is completely preempted by ERISA, this court cannot remand this action. *Giles v. NYL Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999). As such, this Court need not reach the question of whether Plaintiff's quantum meruit and Prompt Pay Act claims are also preempted by ERISA.[6] That Plaintiff's implied contract claim falls within the ERISA benefits scheme is sufficient for this Court to determine that this case was properly removed.

## V.  CONCLUSION

Because this Court has subject matter jurisdiction over this case under ERISA's preemptive power, Plaintiff's Motion for Remand (Doc. No. 7) must be **DENIED**.

---

[6] The Court notes, however, that Plaintiff's quantum meruit claim may also be preempted by ERISA. Recovery under the equitable doctrine of quantum meruit requires proof of four elements: (1) either valuable services or materials or both were furnished; (2) to the party sought to be charged; (3) which were accepted by the party sought to be charged; (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient. *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Here, the party sought to be charged, Defendants, accepted Plaintiff's services according to the terms on the insurance card presented by the patients. Thus, the terms of payment of which Defendants had notice were the terms of the ERISA plan. Furthermore, Defendants only received a benefit for the provision of services to plan members that were covered under the ERISA plan. This further suggests that ERISA preempts this case and that removal to this Court was proper.

**IT IS SO ORDERED**.

**SIGNED** this 17th day of February, 2010.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE